Frances F. LaPRADE et vir, Appellants,

v.

B. F. GOODRICH COMPANY et al., Appellees.

No. 17489.

Court of Civil Appeals of Texas, Dallas.

Nov. 6, 1970.

Rehearing Denied Dec. 4, 1970.

Hal Potts, Fanning & Harper, Dallas, for appellants.

Jack Pew, Jr., Ralph Hartman, Jackson, Walker, Winstead, Cantwell & Miller, C. Robert Rainwater, Thompson, Knight, Simmons & Bullion, Dallas, for appellees.

DIXON, Chief Justice.

This is a products liability case.

Appellants Frances F. LaPrade and her husband, Max R. LaPrade, sued appellees B. F. Goodrich Company, a manufacturer, and Engineering Supply Company, a supplier, for damages resulting from an acid burn suffered when she was wearing a glove labeled a Defiance Brand Latex glove. She alleges that the glove was de-

fective, and consequently failed to protect her from the acid burn.

Engineering Supply Company is a wholly owned subsidiary of Texas Instruments, Inc. The latter is not a party to this suit.

At the time of her injury Mrs. LaPrade was working for Texas Instruments, Inc., by whom she had been employed for about three years. She was engaged in cleaning silicon slices by dipping them into a 49 per cent hydrofluoric acid solution.

Appellants pled that appellees were liable on the ground of implied warranty and in the alternative on the ground of strict liability. However in their brief appellants assert that they pled and submitted their cause of action under the theory of strict liability.

Appellee B. F. Goodrich Company in reply filed a general denial and further pled that (1) it did not manufacture, sell, warrant or furnish the glove in question for the uses to which Mrs. LaPrade put it; (2) it was intended to be used only for the purpose of preventing moisture from her hands being transmitted to the devices with which she was working; (3) Mrs. LaPrade improperly used the glove as a safety device in her work; (4) appellee had no way of reasonably anticipating such use by her; and (5) owed no duty to warn her of possible dangerous effects of using the glove as she did.

Appellee also charged that Mrs. LaPrade was negligent in that (1) she failed to use a heavy duty safety glove; (2) she failed to obey the rule of her employer that she not use the Defiance latex glove as a safety glove; (3) she used the Defiance latex glove for purposes other than those for which the glove was manufactured and sold; and (4) she failed to test the glove adequately before using it.

Engineering Supply Company filed a general denial and sought indemnity against B. F. Goodrich Company if judgment should be rendered against Engineering Supply Company.

In answer to special issues a jury returned a verdict finding that (1) the glove worn by Mrs. LaPrade reached her in substantially the same condition it was in when it left appellees; (2) it was in a defective condition when it left the hands of appellees; (3) the defective condition was a proximate cause of the injuries sustained by Mrs. LaPrade; (4) appellees should have reasonably foreseen in the exercise of ordinary care, of a use by Texas Instruments' employees of Defiance gloves, such as the glove in question, while working with acid; (5) B. F. Goodrich Company sold to Engineering Supply Company Defiance latex gloves for the purpose of protecting the hands of the user in a 49 per cent hydrofluoric acid solution; (8) Max LaPrade and Mrs. LaPrade had necessarily incurred charges for medical services, hospital services, doctors' bills and drug bills in treatment of the injuries sustained as a proximate result of the occurrence in question; (9) in the amount of $5,950; and (10) damages in the amount of $15,000 for past and future pain and mental anguish, loss of earnings in the past, present cash value of loss of earning capacity in the future, cash value of household service of his wife which Max LaPrade has suffered and probably will suffer in the future. Special Issue No. 6 inquired whether the jury found from a preponderance of the evidence that Mrs. LaPrade improperly used the Defiance latex glove as a safety glove in 49 per cent hydrofluoric acid, to which inquiry the jury answered "No". Special Issue No. 7 was conditionally submitted and was not answered.

Appellants filed a motion for judgment on the verdict. Appellees filed motions for judgments *non obstante veredicto*. Appellants' motion was overruled. Appellees' motions were sustained. Judgment was rendered that appellants take nothing.

OPINION

In their first point of error appellants say that there is evidence in the record

upon which the jury could have relied in making its various findings. In other points of error they assert that the court erred in holding by implication that there was no evidence to support the jury's answers that (2) the glove in question reached appellant in substantially the same condition as when it left appellees; (3) the glove was in defective condition when it left the hands of appellees and was a proximate cause of the injuries suffered by Mrs. LaPrade; (4) appellees should have foreseen the using of the glove by employees in working with acid; (5) the Defiance gloves were sold for the purpose of protecting the hands of the users in working with acid; (6) appellant did not improperly use the glove in question as a safety glove in working with acid; and (7) that appellants incurred necessary and reasonable medical expenses and other damages.

Both of the appellees filed counterpoints controverting appellants' points.

Both appellees also filed a number of cross-points contending (in the alternative) that if there was any evidence to support appellants' contentions said evidence was insufficient to support the jury's answers and the jury's answers were so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

We are of the opinion that there was some evidence to support appellants' allegations.

At the time of her injury, October 2, 1962, Mrs. LaPrade was working on a night shift at Texas Instruments. Her job was to clean silicon slices, which are about the size of a dime except that they are not much thicker than a sheet of paper and are very fragile.

Mrs. LaPrade described in detail the several steps involved in the cleaning procedure. First she took the silicon slices from a box and loaded them onto a long-handled teflon jig—a round apparatus with little slots in it. Then with tweezers she picked up the slices and placed them in the slots. Next she put on her apron, gloves, and arm guards and pulled the fume hood down, after which she prepared the acid solution. Then holding the jig by its handle she dipped the jig with the slices in it into the acid, which was a 49 per cent hydrofluoric acid solution. After the dipping operation she took the slices out, put them into a beaker of water for rinsing, following which she took the slices out of the beaker of water, patted them dry and loaded them onto an oblong jig. She then took them to a boy for him to load into the furnace where they were diffused.

Mrs. LaPrade also testified that on the occasion in question while wearing a Defiance brand glove manufactured and distributed by appellees she accidently allowed the tip of her gloved middle finger barely to dip into the acid. The finger of the glove began to deteriorate and she immediately felt the acid burning her finger. She at once went to the company's first aid station where she received initial treatment for the acid burn.

For a week or more Mrs. LaPrade was given treatments daily at Texas Instruments by company doctors. However complications set in. She was subsequently treated at great expense by a number of physicians, among them neurosurgeons. Pain developed in her arms, shoulders and back. She was treated for nerve damage. Two major operations were performed. She says she still suffers continuing pain and is unable to work either at home or at any paid employment.

Mrs. LaPrade testified she never attended any safety meetings for employees of Texas Instruments—in fact did not know of any safety meetings; and no one warned her not to use the Defiance gloves when working with acids.

Mr. Theodore Philip Pritsker, a chemical engineer, testified that he tested a Defiance glove like the one used by Mrs. LaPrade by dipping the glove 15,000 times

into a 49 per cent hydrofluoric acid solution and that the glove showed no ill effects as a result of the test. He concluded that a Defiance glove will withstand a 49 per cent hydrofluoric acid solution if the glove is in good shape. It was his opinion that if Mrs. LaPrade got an acid burn under the condition described there had to be something defective about the glove.

Appellant Max LaPrade testified that medical expenses were incurred over a period of time in the amount found by the jury.

Though we think there was some evidence in support of the jury's answers we cannot reverse and render judgment in favor of appellants, as they would have us do. For we agree with appellees that there is insufficient evidence to support the jury's verdict that the acid burn to the end of Mrs. LaPrade's finger was the cause of her subsequent health condition or the very extensive medical expenses she incurred.

Dr. Jack Stern, a neurological surgeon, first saw Mrs. LaPrade July 3, 1963. He performed the two operations on Mrs. LaPrade. He described the first operation as a dorsal sympathectomy and the second as a dorsal rhizotomy. He testified that he had no opinion as to whether the condition of which Mrs. LaPrade complained was caused by the injury of October 2, 1962.

Dr. Sheff Olinger, Jr., a neurological surgeon, also treated Mrs. LaPrade. He testified that in his opinion Mrs. LaPrade's condition was secondary to her injury of October 2, 1962 in the sense that it was related to her subsequent treatment and was not directly caused by the injury. It was his opinion that her pain was secondary to muscular hypersensitivity and spontaneous recovery was anticipated; that in the future she would suffer some pain of decreasing intensity for a period of some weeks and possibly several months. But he would not anticipate permanent disability or incapacity.

Since we have decided that there was some evidence to support the jury's answers we sustain appellants' points of error. But judgment will not be rendered in favor of appellants for after considering the whole record we are of the opinion that cross-points Nos. 3 and 4 of B. F. Goodrich Company and cross-points Nos. 3, 4, 11, 12 and 13 of Engineering Supply Company must be sustained. By so doing we have in effect found that the evidence is insufficient to support the jury's answers to Special Issues Nos. 3, 8, 9 and 10 and that said answers are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. Therefore the judgment of the court will be reversed and the cause remanded to the trial court for another trial. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); " 'No Evidence' and 'Insufficient Evidence' Points of Error", Calvert, 38 Tex. L.Rev. 361, April 1960.

Reversed and remanded.